UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BERNARD FRAZIER, et al., | : | CIVIL ACTION NO.: |
| | : | 3:03cv358 (JBA) |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| VITALWORKS, INC., et al., | : | |
| | : | |
| Defendants. | : | NOVEMBER 14, 2003 |

DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS THE
CONSOLIDATED CLASS ACTION COMPLAINT

Jonathan B. Tropp (ct11295)
Terence J. Gallagher (ct22415)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, Connecticut 06901
(203) 977-7300 – Telephone
(203) 977-7301 – Facsimile
tjgallagher@dbh.com – E-mail

and

Jonathan Hoff (ct25089)
Jasmine Khalili (ct25090)
Cadwalader Wickersham & Taft LLP
100 Maiden Lane
New York, NY 10023
(212) 504-6000 – Telephone
(212) 504-6666 – Facsimile

TABLE OF CONTENTS                                                    PAGE

STATEMENT OF FACTS ....................................................................................................... 4

ARGUMENT ......................................................................................................................... 11

    POINT I: THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(B) ............................................................................................................. 11

        A.    The Complaint Fails To Allege, With The Requisite Particularity, That Defendants Made False And Misleading Statements Of Fact ............................. 11

            1.    VitalWorks' Products ....................................................................... 13

            2.    The Fuji Strategic Alliance ............................................................... 18

            3.    HIPAA Revenues .............................................................................. 19

            4.    Statements Regarding Financial Projections ................................... 22

        B.    The Statements In The Complaint Are Protected By The Reform Act's Safe Harbor For Forward-Looking Statements ......................................................... 25

        C.    The Complaint Fails To Allege With Particularity That The Defendants Acted With The Requisite Scienter ........................................................................... 31

            1.    The Complaint Does Not Adequately Allege Motive And Opportunity To Commit Fraud ........................................................ 32

            2.    The Complaint Does Not Adequately Allege Facts Constituting Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness ................................................................................. 37

    POINT II: PLAINTIFFS FAIL TO ESTABLISH CONTROL PERSON LIABILITY .. 38

CONCLUSION ..................................................................................................................... 41

# TABLE OF AUTHORITIES

## CASES

*Acito v. IMCERA Grp., Inc.*, 47 F.3d 47 (2d Cir. 1995) .................................................. 33, 36

*In re Alliance Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171 (S.D.N.Y. 2003) ........................ 31

*Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85 (2d Cir. 1999) .......................................... 12

*Asher v. Baxter Int'l, Inc.*, Nos. 02 C 5608, 5742, 5807, 6085, 6175, 6267, 2003 WL 21825498 (N.D. Ill. July 24, 2003) .................................................................................... 26

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F. Supp. 2d 578 (W.D.N.Y. 2000) .................................................................................................................. 4

*Boguslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998) .............................................................. 39

*Brass v. American Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ............................................ 4

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ............................ 12, 36

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ................................................... 4

*DeMaria v. Andersen*, 153 F. Supp. 2d 300 (S.D.N.Y 2001) ................................................... 31

*Eickhorst v. American Completion & Dev. Corp.*, 706 F. Supp. 1087 (S.D.N.Y. 1989) ........ 13

*Ellison v. American Image Motor Co.*, 36 F. Supp. 2d 628 (S.D.N.Y. 1999) .......................... 39

*Elma RT v. Landesmann Int'l Mktg. Corp.*, No. 98 Civ. 3662 LMM, 2000 WL 297197 (S.D.N.Y. Mar. 22, 2000) ......................................................................................................... 4

*Faulkner v. Verizon Communs., Inc.*, 156 F. Supp. 2d 384 (S.D.N.Y. 2001) ........................... 32

*Ferber v. Travelers Corp.*, 785 F. Supp. 1101 (D. Conn. 1991) ............................................. 33

*Field v. Trump*, 850 F.2d 938 (2d Cir. 1988) .......................................................................... 38

*In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871 (W.D.N.C. 2001) ............................ 36

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ......................................... 4, 11, 39

*Glickman v. Alexander & Alexander Servs., Inc.*, No. 93 Civ. 7594, 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996) ....................................................................................................... 32

*Grossman v. Texas Commerce Bancshares, Inc.*, No. 87 Civ. 6295, 1995 WL 552744 (S.D.N.Y. Sept. 15, 1995)..................33

*Halperin v. EBanker USA.com, Inc.*, 295 F.3d 352 (2d Cir. 2002)..................31

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999)..................26

*Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360 (S.D.N.Y. 2001)..................38

*In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97 Civ. 1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998)..................36

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697 (2d Cir. 1994)..................19

*Janas v. McCracken (In re Silicon Graphics Inc. Sec. Litig.)*, 183 F.3d 970 (9th Cir. 1999)..................37

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001)..................11, 32, 33

*Kersh v. General Council of Assemblies of God*, 804 F.2d 546 (9th Cir. 1986)..................39

*In re Keyspan Corp. Sec. Litig.*, No. 01 CV 5852, 2003 WL 21981806 (E.D.N.Y July 30, 2003)..................28, 29

*Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55 (2d Cir. 1996)..................15

*Levitt v. Bear Stearns & Co.*, 340 F.3d 94 (2d Cir. 2003)..................11

*Lipton v. PathoGenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002)..................35

*In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331 (S.D.N.Y 2001)..................38

*McLaughlin v. Cendant Corp. (In re Cendant Corp. Sec. Litig.)*, 76 F. Supp. 2d 539 (D.N.J. 1999)..................39

*Meilke v. Constellation Bancorp*, No. 90 Civ. 3915, 1992 WL 47342 (S.D.N.Y. Mar. 4, 1992)..................15

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)..................12

*Mishkin v. Ageloff*, No. 97 Civ. 2690 LAP, 1998 WL 651065 (S.D.N.Y. Sept 23, 1998)..................39, 40

*Newby v. Enron Corp. (In re Enron Corp. Sec., Deriv. & ERISA Litig.)*, 258 F. Supp. 2d 576 (S.D. Tex. 2003)..................34

*In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613 (S.D.N.Y. 2003)..................11

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ............................................................. 12, 32, 37, 38

*In re Penn Treaty Am. Corp. Sec. Litig.*, 202 F. Supp. 2d 383 (E.D. Pa. 2002) ........................... 25

*In re Peritus Software Services, Inc.*, 52 F. Supp. 2d 211 (D. Mass. 1999) ................................. 36

*Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43 (E.D.N.Y. 1999) ..................................... 33, 36

*Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520 (11th Cir. 1994) ............................................... 39

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ........................................................... 12, 38

*Rubenstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315 (S.D.N.Y. 1999) ....................................... 39

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) ............................................ 39

*SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298 (N.D. Ala. 2003) ........................................ 34

*San Leandro Emer. Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) ............................................................................................. 12, 15, 37, 38

*Saslaw v. Askari*, No. 95 Civ. 7641, 1997 WL 221208 (S.D.N.Y. Apr. 25, 1997) ......................... 31

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) .......................................... 37

*Silva Run Worldwide Ltd. v. Bear Stearns & Co.*, No. 96 Civ. 5102, 2000 WL 1672324 (S.D.N.Y. Nov. 6, 2000) ........................................................................................ 11

*In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) .......................................................................................................... 37

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116 (2d Cir. 2003) ................ 11

*Stransky v. Cummins Engine Co.*, 51 F.3d 1329 (7th Cir. 1995) ........................................... 25

*Thacker v. Medaphis Corp.*, No. 97 Civ. 2849, 1998 WL 684595 (S.D.N.Y. Sept. 30, 1998) ........................................................................................................... 37

*Truncellito v. Scholastic Corp. (In re Scholastic Corp. Sec. Litig.)*, 252 F.3d 63 (2d Cir. 2001) .......................................................................................................... 12

*Wexner v. First Manhattan Co.*, 902 F.2d 169 (2d Cir. 1990) ........................................ 15, 32

*In re Xerox Corp. Sec. Litig.*, 165 F. Supp. 2d 208 (D. Conn. 2001) ..................................... 26

## STATUTES

Section 10(b), 15 U.S.C. § 78j(b) ............................................................................................... passim

Section 20(a), 15 U.S.C. § 78t(a) ........................................................................................1, 3, 39, 40

15 U.S.C. § 78u-4(b) .................................................................................................................... 31

15 U.S.C. § 78u-4(b)(1) ................................................................................................................ 12

15 U.S.C. § 78u-4(b)(2) ............................................................................................................32, 39

15 U.S.C. § 78u-5(i)(1) ................................................................................................................. 26

15 U.S.C. § 78u-5(c) ..............................................................................................................26, 28, 29

15 U.S.C. § 78u-5(c)(2) ................................................................................................................ 31

## RULES

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ........................................................................................ 1

SEC Rule 10b5-1, 17 C.F.R. § 240.10b5-1 ..........................................................................5, 34, 35, 36

Fed. R. Civ. P. 9(b) ....................................................................................................2, 12, 13, 14, 18

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1

## OTHER AUTHORITY

H.R. Conf. Rep. 104-369 .........................................................................................................11, 26

SEC Rel. Nos. 33-5362, 1973 WL 149309 (Feb. 2, 1973) ............................................................ 25

SEC Rel. Nos. 33-7881, 2000 WL 1201556 (Aug. 15, 2000) ....................................................... 34

Defendant VitalWorks, Inc. ("VitalWorks" or the "Company") and Defendants Joseph M. Walsh ("Walsh"), Michael A. Manto ("Manto") and Stephen N. Kahane ("Kahane") (the "Individual Defendants") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Class Action Complaint ("Complaint") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Contrary to the kinds of scandals that have been the subject of recent media attention, government prosecutions and shareholder litigations, this case does not involve the restatement of false financial statements filed with the Securities and Exchange Commission ("SEC") and disseminated to the public, nor does it involve fictitious or fraudulent transactions, accounting manipulations or self-dealing transactions in which management raids the corporate till for its own enrichment. Rather, this case involves nothing more than allegations that VitalWorks and its senior executives did not have a reasonable basis for making certain financial projections and other forward-looking statements about the Company's expectations as to the prospects for the successful development of its products.

Specifically, plaintiffs assert claims against VitalWorks and the Individual Defendants pursuant to Section 10(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The Complaint also attempts to allege "control person" liability against the Individual Defendants under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). In so doing,

---

[1] A copy of the Complaint is attached as Exhibit 1 to the accompanying Affidavit of Terence J. Gallagher dated November 13, 2003 ("Gallagher Aff.").

the Complaint essentially sets forth two categories of allegations against the Defendants. The first category consists of allegations that the Defendants made materially false or misleading statements about the Company's future business and operational prospects concerning (1) new product initiatives; (2) a new contract that was anticipated to enhance future revenues; and (3) revenues that were anticipated to result from compliance by the Company's customer base with federal regulations mandated by the Health Insurance Portablity and Accountability Act of 1996 ("HIPAA"). The second category consists of allegations that the Company's projections of its future financial performance were materially false and misleading and lacked a reasonable basis in fact. In that regard, VitalWorks periodically provided guidance regarding estimates of future financial performance to the investment community through SEC filings, quarterly press releases and conference calls with securities analysts. For a number of quarters, VitalWorks consistently met or exceeded its guidance, and, indeed, was viewed by analysts as conservative in its forecasts. During the third quarter of 2002, however, when it appeared as if it would not meet guidance with respect to expected revenues for that quarter and for all of 2002 and 2003, the Company promptly disseminated that information. Plaintiffs now claim that between January 24, 2002 and October 23, 2002 (the "Class Period"), Defendants made materially false and misleading statements with respect to both categories of forward-looking statements in order to artificially inflate the price of VitalWorks' stock.

Plaintiffs' claims are deficient as a matter of law and should be dismissed with prejudice. First, Defendants did not make any materially false or misleading statements. The Complaint completely lacks any allegation of fact that could establish that the challenged statements were untrue at the time they were made. Absent such allegations of fact, the Complaint does not meet the pleading requirements of the Private Securities Litigation Reform Act of 1995 (the "Reform Act") and Fed. R. Civ. P. 9(b).  See Point I(A). Second, the

challenged statements are protected by the statutory safe harbor for forward-looking statements enacted as part of the Reform Act. All of the challenged statements are forward-looking statements that were accompanied by detailed disclosures of risks relating to the matters now challenged by plaintiffs. Moreover, the Complaint contains no allegation of fact, as required by the Reform Act, that the Defendants knew the forward-looking statements were false or even that the forward-looking statements lacked reasonable basis. See Point I(B). Third, plaintiffs have not alleged sufficient facts to raise a strong inference that the Defendants acted with an intent to deceive, manipulate or defraud, as required by the rigorous pleading standards established under the Reform Act. See Point I(C). Finally, because the Complaint fails to alleged a viable claim against the Company under Section 10(b) and fails to allege facts sufficient to establish that any of the Individual Defendants were culpable participants in any fraud, the "control person" claim against the Individual Defendants under Section 20(a) must also be dismissed.

## STATEMENT OF FACTS[2]

**The Parties**

Defendant VitalWorks maintains its executive offices in Ridgefield, Connecticut. Compl. ¶ 21. Its common stock is publicly traded on the Nasdaq National Market. VitalWorks is a provider of information management technology and services targeted to healthcare practices and organizations. Id. The Company provides IT-based solutions for general medical practices and has specialty-specific products and services for practices, such as radiology, anesthesiology, ophthalmology, emergency medicine, plastic surgery and dermatology. See 2001 Annual Report on Form 10-K, filed on March 29, 2002 ("Annual Report"), attached as Exhibit 2 to Gallagher Aff. The Company's products are designed to automate the administrative, financial and clinical information management functions of office-based physician practices, hospital-based practices and large healthcare enterprises, clinics and organizations. Id.

---

[2] For purposes of this motion to dismiss, the Court must accept the truth of all well-pled factual allegations in the Complaint. See Elma RT v. Landesmann Int'l Mktg. Corp., No. 98 Civ. 3662 LMM, 2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000). However, the Court need not assume the truth of legal conclusions or unsupported factual inferences. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir.), cert. denied, 519 U.S. 1007 (1996). Additionally, the Court may consider documents submitted in support of the motion that are referenced in the Complaint or relied upon by plaintiff in bringing the action, even if such documents are not physically attached to the Complaint, see id., as well as public disclosure documents filed with the SEC and any documents that plaintiffs had "'either in [their] possession or of which [they] had knowledge and relied on in bringing the suit.'" Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., 129 F. Supp. 2d 578, 580-81 (W.D.N.Y.) (citing Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)), aff'd, 229 F.3d 1135 (2d Cir. 2000), cert. denied, 532 U.S. 1137 (2001). In addition, courts may take judicial notice of well-publicized stock prices without converting motion to dismiss into motion for summary judgment. See Ganino v. Citizens Utils. Co., 228 F.3d 154, 167 n.8 (2d Cir. 2000).

Here, it is appropriate for the Court to consider the reports of securities analysts, VitalWorks' 2001 Annual Report, First Quarter Report on Form 10-Q and Second Quarter Report on Form 10-Q (all filed with the SEC), certain press releases and statements made in quarterly earnings conference calls, attached as exhibits to the accompanying Gallagher Affidavit. In addition, plaintiffs have specifically pleaded that the allegations in their Complaint are made upon information and belief based on an "extensive investigation" that included, among other things, a review of public statements and filings by VitalWorks and its senior officers, securities analysts' reports, press releases and media reports. See Compl. Preamble at p. 1 and ¶¶ 114-15. As such, the Court may take these documents into consideration on a motion to dismiss.

Defendant Walsh is VitalWorks' Chief Executive Officer and President and is the Chairman of the Board of Directors. Id. ¶ 22. Defendant Manto is VitalWorks' Executive Vice President and Chief Financial Officer and is also a Director. Id. ¶ 23. Defendant Kahane is the Company's Chief Strategy Officer and is the Vice Chairman of the Board of Directors. Id. ¶ 24. In the second quarter of 2002, Walsh, Manto and Kahane, in addition to certain other VitalWorks' executive officers, entered into individual stock trading plans with the Company -- that is, contractual arrangements that were adopted pursuant to SEC Rule 10b5-1 -- that "specify trading periods that generally extend for up to one year, [the] number of shares to be sold and prices at which shares may be sold." See First Quarter 2002 Report on Form 10-Q and Second Quarter 2002 Report on Form 10-Q attached as Exhibits 3, 4 to Gallagher Aff.

**VitalWorks' Business And Products**

During the third quarter of 2000, the Company began a massive restructuring to consolidate facilities and streamline operating costs. Id. As a result, by the end of 2001, VitalWorks had reduced the number of its facilities from 21 to 7 and the number of its employees from 1,100 to 650. The Company also significantly reduced its products from 88 to seven key products, which it refers to as its "Core" products. Id. These "Core" products are the Company's primary products offered to its targeted practice areas, which offer advanced functionality for customers and operate with the latest generation of computer operating systems and computer hardware products. See Compl. ¶ 39; Gallagher Aff., Ex. 2. In accordance with the downsizing of its product line, the Company announced that it was no longer marketing or selling what it refers to as its "Classic" products. Classic products offer adequate functionality for customers, but typically lack advanced practice management features and are not designed for the latest generation of computer operating systems. In March 2002, the Company

announced that it would no longer market or sell its Classic products, although it intended to continue to provide support for 22 of its Classic products. See Gallagher Aff. Ex. 2.

On January 28, 2002, VitalWorks announced that it had entered into a strategic partnership with FujiFilm Medical Systems U.S.A. ("Fuji") to integrate Fuji's Synapse picture archival and communications systems ("PACS") with the Company's radiology information system, or "RIS" (the "Fuji Agreement"). See January 28, 2002 Press Release attached as Exhibit 5 to Gallagher Aff.; Compl. ¶ 79. Fuji and VitalWorks planned to co-market the combined system to ambulatory imaging centers. See id.

In its 2001 Annual Report, VitalWorks stated that many of its customers were subject to new regulations mandated by HIPAA. See Gallagher Aff. Ex. 2. HIPAA was designed to improve portability and continuity of health insurance coverage, to combat waste, fraud and abuse in health insurance and health care delivery, to promote the use of medical savings accounts, to improve access to long-term care services and coverage and to simplify the administration of health insurance. See www.vitalworks.com/HIPAA.html. One aspect of HIPAA required the establishment of a national standard format for electronic data interchange in health care. The original date for compliance was October 16, 2002. On December 27, 2002, President Bush signed into law an extension of the deadline for compliance to October 16, 2003.

On April 11, 2002, the Company announced the commercial release of RadConnect™ RIS ("RadConnect RIS"), VitalWorks' next generation Core RIS product. See April 11, 2002 Press Release attached as Exhibit 6 to Gallagher Aff.; Compl. ¶ 83. RISs are the primary systems used by imaging centers and radiology practices to manage patient processing, staff and resource scheduling and workflow. See Gallagher Aff. Ex. 2.

**VitalWorks' Financial Projections**

Periodically, VitalWorks provided guidance to the investment community by making forecasts or projections regarding the Company's anticipated future financial performance. Typically, VitalWorks provided guidance as to future revenues, net income and earnings per share ("EPS"). Since the Company's restructuring in 2000, VitalWorks has consistently met or exceeded its projections (see William Blair & Company ("William Blair") Report, dated July 24, 2002 attached as Exhibit 7 to Gallagher Aff.), and, significantly, the Complaint contains no allegation that the Company's historical results, as reported to the SEC, were in any way inaccurate. These projections were communicated through filings with the SEC, press releases and quarterly public earnings conference calls.

On January 24, 2002, the start of the Class Period, the Company announced its 2001 fourth quarter results and its projections for the first quarter 2002 and the full 2002 annual results. See January 24, 2002 Press Release attached as Exhibit 8 to Gallagher Aff. For the fourth quarter of 2001, VitalWorks reported a net loss of $2.2 million, or ($.06) per share ("EPS"), and $28 million in revenues. See id. VitalWorks also announced that it expected first quarter 2002 revenues of approximately $28 million and net income of approximately $2.5 million, or $.05 EPS. See id. For the year 2002, the Company estimated revenues of approximately $120 million and net income of approximately $12 million, or $.24 EPS. See id.; Compl. ¶ 77.

Shortly thereafter, one analyst covering VitalWorks -- SunTrust Robinson Humphrey ("SunTrust") -- reported that it believed that the Company's forecast was conservative and that it anticipated revenues of $118.7 million, but agreed with the Company's estimate of EPS of $.24. See SunTrust Report, dated February 4, 2002 attached as Exhibit 9 to Gallagher Aff. While recognizing that VitalWorks' "[m]anagement has proven itself adept at

-7-

projecting and managing the business to [its] projections," SunTrust recognized there was "potential softness in revenues." Id. Another analyst -- Wells Fargo Securities, LLC ("Wells Fargo") -- reported that it, too, expected annual revenue of $118.7 million and EPS of $0.24. See Wells Fargo Report, dated March 22, 2002, attached as Exhibit 10 to Gallagher Aff.

On April 23, 2002, the Company announced its first quarter 2002 results and projections for second quarter 2002. See April 23, 2002 Press Release attached as Exhibit 11 to Gallagher Aff. Specifically, VitalWorks announced that it had far exceeded its first quarter earnings projections, reporting a record $7.6 million net income (as compared to the forecasted $2.5 million), or $.16 EPS (as compared to the forecasted $.05). See id. There is no allegation in the Complaint that these reported results were inaccurate, let alone false or misleading. Looking forward, the Company reported that it expected to have second quarter 2002 revenues of approximately $29 million and net income of approximately $3.8 million, or $.07 to $.08 EPS. See id.; Compl. ¶ 85. The Company also raised its guidance for the year 2002 for net income to $18.5 to $19.5 million (from $12 million), or $.36 to $.38 EPS (from $.24), but did not increase its guidance with respect to revenues. See id. For 2003, VitalWorks estimated revenues of $132 million to $138 million and net income of $20 million to $24 million, or $.37 to $.45 EPS. See id.

On July 23, 2002, the Company announced its second quarter 2002 results and projections for the third quarter 2002, revised its guidance for the year 2002 and provided estimates for 2003. See July 23, 2002 Press Release attached as Exhibit 12 to Gallagher Aff. VitalWorks, once again, far exceeded its forecast for net income and EPS by reporting net income of $8.3 million, or $.17 EPS (as compared to the forecasted $3.8 million and $.07 to $.08 EPS, respectively), and reported revenues of $28.7 million, which was consistent with its guidance of "approximately $29 million." See id. Again, there is no allegation in the Complaint

challenging the bona fides of these reported results. Looking forward, the Company advised that it expected to have third quarter 2002 revenues of approximately $30 million and net income of approximately $4 million, or $.08 EPS. See id.; Compl. ¶ 91. VitalWorks also reported that it was raising its guidance for fiscal year 2002 net income to $23 million to $24.5 million, or $.45 - $.48 EPS. See id.

The next day, an analyst -- William Blair -- reported that "[f]or the sixth consecutive quarter, VitalWorks exceeded our financial expectations, as management continues to execute extremely well on its turnaround plan." See Gallagher Aff., Ex. 7. Despite VitalWorks' increase in guidance, however, William Blair "conservatively project[ed] revenue of $119 million for 2002 and $138 million in 2003." See id. Likewise, SunTrust also reported that VitalWorks exceeded its expectations in the second quarter and, as a result, SunTrust increased its EPS estimates for 2002 and 2003 to $.34 and $.44, respectively. See SunTrust Report, dated July 24, 2002, attached as Exhibit 13 to Gallagher Aff. VitalWorks also exceeded Wells Fargo's EPS estimate. See Wells Fargo Report, dated July 24, 2002 attached as Exhibit 14 to Gallagher Aff. Because revenues were slightly lower than it expected, however, Wells Fargo adjusted its revenue estimates for the remainder of the year by lowering its third quarter 2002 estimate to $29.9 million, notwithstanding the Company's revised guidance of approximately $30 million. See id.

On October 23, 2002, VitalWorks reported its third quarter 2002 results, expectations for the fourth quarter 2002 and revised its guidance for 2003. See October 23, 2002 Press Release attached as Exhibit 15 to Gallagher Aff. VitalWorks announced that it had, once again, met net income and EPS expectations, reporting net income of $4.1 million (as compared to the forecasted $4.0 million or $.08 EPS). See id. The Company's revenues of $28.7 million, however, fell slightly short of its projections of "approximately $30 million." See id. As with